USCA1 Opinion

 

 
 United States Court of Appeals
 For the First Circuit

No. 98-1302

 HUNG NGUYEN,

 Plaintiff, Appellant,

 v.

 SHIRLEY S. CHATER,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Reginald C. Lindsay, U.S. District Judge]

 Before

 Torruella, Chief Judge,
 Boudin and Lipez, Circuit Judges.
 
 

 Ronald B. Eskin on brief for appellant.
 Donald K. Stern, United States Attorney, and Anita Johnson,
Assistant U.S. Attorney, on brief for appellee.

March 26, 1999

 
 

 
 Per Curiam. Claimant Nguyen applied for social
 security disability benefits after injuring his back at work in
 January, 1993. Following a March, 1995 hearing, an
 administrative law judge (ALJ) found that although claimant's
 severe lumbar and cervical disc-disease prevented him from
 returning to his vocation of welder-carpenter, he retained the
 functional capacity for sedentary work and exhibited no
 significant exertional or non-exertional impairments. The ALJ
 then applied the Medical Vocation Guidelines, 20 C.F.R. Part
 404, Subpart P, Appendix 2 (the Grid), to find that the
 national economy offered claimant substantial employment; ergo,
 he was not disabled. The Appeals Council and the district
 court sustained the decision, whereupon claimant appealed to
 this court. Claimant argues that the ALJ erred in assessing
 his residual functional capacity by ignoring medical evidence,
 substituting his judgment for that of medical professionals and
 improperly discounting the opinion of a treating physician. 
 We agree. We vacate the judgment of the district court with
 instructions to remand for further proceedings.
 I. 
 The record shows that claimant was initially
 diagnosed by an occupational health clinic with acute lower-
 back strain. Despite prescribed rest and medication, he soon
 experienced peripheral numbness and radiating pain, triggering
 a series of diagnostic tests. In February, the clinic ordered
 a magnetic resonance scan (MRI) which revealed some lumbar-disc
 degeneration and bulging, but no robust herniation. A follow-
 up surgical consultation disclosed no nerve deficits.
 In May, 1993, Neurologist Mahoney, who apparently
 assumed primary responsibility for claimant's care, ordered
 another MRI which revealed diffuse narrowing of the lumbar
 spine, aggravated by disc disease. It also revealed central
 disc herniation, although Dr. Mahoney and Dr. Beers, the
 performing radiologist, disagreed about the magnitude of the
 herniation. At any rate, Dr. Mahoney found claimant utterly
 incapacitated and referred him to Dr. Selland for a surgical
 consultation. Upon physical examination, Dr. Selland agreed
 that claimant was incapacitated and scheduled a myelogram. The
 doctors agreed that the myelogram was unremarkable, precluding
 surgery.
 By August, Dr. Mahoney reported that claimant's
 condition had further deteriorated and he ordered another MRI
 to evaluate treatment alternatives. Dr. Beers reported marked
 narrowing of the lumbar spinal-canal with potential nerve
 compression. Dr. Mahoney concluded that the MRI revealed a
 congenitally small, lumbar spinal-canal, aggravated by
 secondary disc-protrusions, and that the findings could explain
 claimant's severe symptoms. In September, 1993, Dr. Beers
 performed a cervical MRI and reported bulging discs with mild
 pressure on the cervical cord and diffuse narrowing of the
 cervical canal, within the lower limits of normal.
 On October 21, 1993, Dr. Mahoney admitted claimant to
 the hospital for 72 hours after he presented with
 incapacitating pain. Dr. Mahoney reported that while claimant
 exhibited no major, peripheral, neurological abnormalities, he
 was debilitated by pain attributable to congenital narrowing of
 the lumbar spine, aggravated by bulging discs. This remained
 Dr. Mahoney's opinion through the date of his last report,
 April, 1994, despite numerous treatments, including, rest,
 medications, physical therapy, a back-brace and spinal blocks.
 II.
 In the opinion, the ALJ found that claimant had
 discharged his burden of establishing that a severe impairment
 prevented him from resuming his former occupation. 
 Accordingly, the ALJ proceeded to the determination of
 claimant's residual functional capacity. 20 C.F.R. 404.1520
 and 404.1561. Since, following the medical advisor, the ALJ
 conceded that claimant's condition was painful, his
 determination of residual functional capacity had to take into
 account the severity of claimant's pain and the extent to which
 it impeded his ability to work. 20 C.F.R. 404.1529(a) and
 (b); Da Rosa v. Secretary of Health and Human Services, 803
 F.2d 24, 25 (1st Cir. 1986). In making this assessment, the ALJ
 was required to consider evidence in addition to medical tests,
 including, inter alia, claimant's statements, opinions of
 treating physicians, reports of claimant's activities and
 claimant's course of treatment. 20 C.F.R. 404.1529(c).
 The ALJ found that claimant suffered no significant
 exertional or non-exertional impairments which limited his
 capacity to perform the full range of sedentary work. He
 reasoned that the reports of both Dr. Mahoney and claimant
 concerning the severity of claimant's pain and inability to
 remain seated were exaggerated. Specifically, claimant could
 satisfy his need to change position with regularly-scheduled
 breaks. The ALJ then invoked the Grid to prove that claimant
 was not disabled.
 III
 Our review is limited to determining whether the ALJ
 deployed the proper legal standards and found facts upon the
 proper quantum of evidence. Manso-Pizarro v. Secretary, 76
 F.3d 15, 16 (1st Cir. 1996)(per curiam). The ALJ's findings of
 fact are conclusive when supported by substantial evidence, 42
 U.S.C. 405(g), but are not conclusive when derived by
 ignoring evidence, misapplying the law, or judging matters
 entrusted to experts. Da Rosa v. Secretary, 803 F.2d 24, 26
 (1st Cir. 1986)(per curiam); Ortiz v. Secretary of Health and
 Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Employing
 these standards, we hold that errors of law and a dearth of
 evidence invalidated the ALJ's finding that claimant retained
 the residual functional capacity to perform sedentary work and
 exhibited no significant exertional or non-exertional
 impairments.
 Dr. Mahoney repeatedly rendered the opinion that
 claimant was incapacitated by severe pain. The ALJ rejected
 the opinion as inconsistent with "actual findings made on exam
 and the degree of treatment needed," the lack of "recent
 treatment," and some unspecified aspect of the entire record. 
 This reasoning lacks proper support in the record. With
 respect to medical findings and treatment, Dr. Mahoney's
 ultimate opinion that claimant suffered severe pain
 attributable to spinal stenosis was uncontroverted. Although
 his initial May diagnosis of frank herniation may have been
 controversial, no medical opinion in the record challenged his
 ultimate diagnosis. The medical advisor never addressed, nor
 did the ALJ mention, either Dr. Mahoney's ultimate opinion or
 the related August and September MRIs. Similarly, no medical
 opinion in the record suggested that claimant's course of
 treatment was incommensurate with his purported ailment. The
 ALJ was not at liberty to ignore medical evidence or substitute
 his own views for uncontroverted medical opinion. Rose v.
 Shalala, 34 F.3d 13, 18 (1st Cir. 1994); Nieves v. Secretary of
 Health and Human Services, 775 F.2d 12, 14 (1st Cir. 1985);
 Suarez v. Secretary of Health and Human Services, 740 F.2d 1
 (1st Cir. 1984)(per curiam). 
 The Commissioner suggests that despite Dr. Mahoney's
 opinion, the medical record supported the ALJ's determination
 that claimant was fully capable of performing sedentary work.
 As a lay person, however, the ALJ was simply not qualified to
 interpret raw medical data in functional terms and no medical
 opinion supported the determination. Manso-Pizarro v.
 Secretary of Health and Human Services, 76 F.3d 15 (1st Cir.
 1996); Perez v. Secretary of Health and Human Services, 958
 F.2d 455, 446 (1st Cir. 1991); Berrios Lopez v. Secretary of
 Health and Human Services, 951 F.2d 427 (1st Cir. 1991); Gordilsv. Secretary of Health and Human Services, 921 F.2d 327, 329
 (1st Cir. 1990).
 The ALJ's grounds for rejecting claimant's own
 reports of severe pain and incapacity also lack support in the
 record. The ALJ reasoned that claimant's complaints were
 inconsistent with his activities and "the degree of treatment
 required." Concerning treatment, the record showed that
 between the date of his injury and April, 1994, claimant
 continually sought and received treatment for back-pain,
 including, numerous tests, physical therapy, back-braces,
 spinal-blocks, various drug regimes and a hospitalization. 
 This was not a case in which a claimant failed to seek
 treatment for symptoms later claimed debilitating. C.f.,
 Dupuis v. Secretary of Health and Human Services, 869 F.2d 622
 (1st Cir. 1989); Perez Torres v. Secretary of Health and Human
 Services, 890 F.2d 1251, 1255 (1st Cir. 1989). 
 The ALJ also appealed to a discrepancy between
 claimant's alleged inability to remain seated and his admission
 that he drove. At the hearing, claimant testified that his
 chronic neck and back pain prevented him from remaining seated
 for more than an half-hour; he spent his days shifting position
 in search of comfort. After taking medication, he reclined for
 several hours, sleeping two of those hours. The record
 included claimant's December, 1993 request for reconsideration
 in which he reported that he had become house-bound, venturing
 out only for medical appointments, and could not tie his shoes
 or bend. His wife's help was often necessary to don socks and
 slacks and to shower. To this evidence, the ALJ counterpoised
 claimant's admission that he drove. The only evidence
 concerning driving appeared in the initial June, 1993,
 disability application, where the unadorned "I drive" was
 proffered in response to a request for a description of daily
 activities. The ALJ never asked claimant how much he drove or
 asked him about his subsequent driving history. 
 In summary, the ALJ's finding that claimant was
 capable of performing the full range of sedentary work without
 any significant impairments was not supported by the record. 
 As claimant argues, the error invalidated the ALJ's application
 of the Grid to discharge his burden of proving that claimant
 was employable. Pain can constitute a significant non-
 exertional impairment which precludes naked application of the
 Grid and requires use of a vocational expert. Heggarty v.
 Sullivan, 947 F.2d 990, 995 (1st Cir. 1991); Burgos Lopez v.
 Secretary of Health and Human Services, 747 F.2d 37, 41-42 (1stCir. 1984); Gagnon v. Secretary of Health and Human Services,
 666 F.2d 662, 664, 666 n.8 (1st Cir. 1981). The inability to
 remain seated may constitute an exertional impairment which
 significantly erodes the occupational base for sedentary work
 and requires use of additional vocational resources. Rose v.
 Shalala, 34 F.3d 13, 19 (1st Cir. 1994); Social Security Ruling96-9p, 61 Fed. Reg. 34478 (July 2, 1996)(vocational specialist
 may be required where period between regularly-scheduled breaks
 exceeds capacity to remain seated); Social Security Ruling 83-
 12 (1983). 
 IV.
 We vacate the judgment of the district court and
 direct the district court to remand the case to the
 Commissioner for further proceedings consistent with this
 opinion. On remand, the ALJ must reassess, after any
 proceedings that may be suitable, the severity of claimant's
 symptoms, including his pain and inability to remain seated,
 taking into account the entire record and obtaining any expert
 medical opinion needed to illuminate the medical records. If
 the ALJ finds, as he may, that any treating physician's opinion
 is not credible, then he must comply with the regulations by
 explicating his grounds. In any event, before simply applying
 the Grid, the ALJ must consider the extent to which claimant's
 exertional or non-exertional impairments may compromise his
 ability to perform sedentary work and utilize appropriate
 vocational resources.
 Vacated and remanded.