**Abbe L. MORRISON, Plaintiff,**

**v.**

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 8:02–CV–16–4–T–EAJ.**

United States District Court, M.D. Florida, Tampa Division.

July 3, 2003.

Emily Wortman Lawyer, Law Office of Emily W. Lawyer, Tampa, for Abbe L. Morrison, plaintiff.

Susan R. Waldron, U.S. Attorney's Office, Middle District of Florida, Tampa, Elyse S. Sharfman, Mary Ann Sloan, Dennis R. Williams, Douglas Gregory Wilson, General Counsel's Office, Social Security Administration, Sam Nunn Atlanta Federal Center, Atlanta, GA, Peter S. Krynski, Social Security Administration, Office of the General Counsel, Falls Church, VA, for Commissioner of Social Security, defendant.

## FINAL ORDER

JENKINS, United States Magistrate Judge.

Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her claim for a period of disability and disability insurance benefits under the Act.[1]

---

1. The parties have consented in this case to the exercise of jurisdiction by a United States

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. *See Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir.1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. *See Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

Plaintiff alleges an onset of disability on June 30, 1995, due to fibromyalgia syndrome, irritable bowel syndrome, depression, insomnia, and dysmenorrhea. (T 86, 95) Thirty-eight years old at the time of the ALJ's decision on December 20, 2000, plaintiff has a college education and prior

work experience as an adjunct professor and customer support representative/salesperson/computer programmer. (T 99) A hearing was held before the ALJ on September 26, 2000. (T 37)

In the decision denying benefits, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date and continued to meet the insured requirements of the Act only through September 30, 2000. (T 15–16, 20) He found that plaintiff had fibromyalgia, which was a severe impairment but did not meet or equal any listed impairment. (T 17, 20) The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform the full range of medium work or work that involves lifting up to fifty pounds with frequent lifting or carrying up to twenty-five pounds; standing/walking, off and on, for six hours in an eight-hour day; using the arms and hands to grasp, hold, and turn objects; and frequent bending/stooping. (T 19–20) Consequently, the ALJ determined that plaintiff was able to perform her past relevant work. (T. 20) The ALJ, therefore, denied plaintiff's claim for disability benefits. (T 27–28)

On July 11, 2002, the Appeals Council denied plaintiff's request for review. (T 5–7) Accordingly, the Appeals Council allowed the ALJ's decision to stand. (T 5–7)

Plaintiff argues that the Commissioner erred by (1) failing to give proper weight to the opinion of plaintiff's treating physician; (2) failing to consider the combined effect of all impairments and subjective symptoms, including pain; and (3) failing to consider corroborative written testimony. (Dkt–19 at 13–18) For the reasons set forth below, the decision of the Commissioner shall be reversed and remanded for

Magistrate Judge. (Dkt–10)

further proceedings consistent with this Order.

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## II.

■ A. When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir.1985); *see also* 20 C.F.R. § 1527(d)(2). Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997). Good cause for rejecting a treating source's opinion may be found where such opinion is not supported by the evidence or where the evidence supports a contrary finding. *Id.; Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.1987). Additionally, good cause may be found where the doctor's opinions are conclusory or internally inconsistent. *Jones v. Dep't of HHS*, 941 F.2d 1529, 1532 (11th Cir.1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991). Importantly, the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor*, 786 F.2d at 1053).

■ The reports of reviewing, non-examining physicians do not constitute substantial evidence on which to base an administrative decision. *Spencer on Behalf of Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985); *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988) ("The opinions of non-examining, reviewing physicians, . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.") Further, the good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician. *Johns v. Bowen*, 821 F.2d 551 (11th Cir.1987).

Plaintiff contends that the ALJ erred by failing to give proper weight to the opinion of plaintiff's treating physician, Dr. Richard A. Yonker, a rheumatologist. In support, contrary to the ALJ's conclusion, plaintiff asserts that Dr. Yonker's opinion is supported by the only clinical findings relevant to fibromyalgia, that is, the required tender points. Plaintiff further argues that Dr. Yonker's opinion is consistent with the consultative exams and diagnoses of the examining physicians, Dr. Robert L. Ikeman, also a rheumatologist, and Dr. A. Del Pizzo. In addition, plaintiff asserts that the ALJ himself accepted the diagnosis of fibromyalgia, and without any conflicting opinion as to the residual functional effects of plaintiff's fibromyalgia, plaintiff argues that there was no good cause to reject Dr. Yonker's opinion. Therefore, plaintiff contends that Dr. Yonker's opinion should be accepted as true as a matter of law because the ALJ's decision on this point is not supported by any evidence by an examining physician, much less a rheumatologist. (Dkt–19 at 13–16)

In his decision, the ALJ found that the medical evidence established that plaintiff had fibromyalgia, a severe impairment but not severe enough to meet or medically equal one of the listed impairments. (T 17, 20) Further, he acknowledged the opinion of Dr. Robert Ikeman, a rheumatologist, who performed a consultative exam and diagnosed plaintiff with fibromyalgia.[2] (T 18) As for Dr. Yonker, the ALJ found that his progress notes and laboratory reports revealed "no significant findings." (T 18) Importantly, he rejected Dr. Yonker's opinion that plaintiff is incapable of lifting any weight and is further limited to standing/walking for a total of forty minutes in an eight-hour day (ten minutes without interruption) and sitting for a total of forty minutes in an eight-hour day (five minutes without interruption).[3] (T 19) In rejecting Dr. Yonker's opinion and according it no weight, the ALJ reasoned that it was not consistent with the record evidence "as a whole, including the doctor's own examination findings." (T 19)

In determining plaintiff's RFC, the ALJ accorded significant weight to the non-examining state agency physicians who opined that plaintiff could perform the full range of medium work. (T 19) He explained that they provided specific reasons for their opinions, which he stated were grounded in the evidence, including consid-

eration of plaintiff's allegations about her symptoms and limitations.[4] (T 19) The ALJ further found that the record evidence received after reconsideration did not provide any basis for altering the findings regarding plaintiff's RFC.[5] Further, he determined that plaintiff's subjective complaints were not fully credible, and he reasoned that there were discrepancies between her assertions and information contained in the documentary reports, her demeanor at the hearing, the reports of the treating and examining practitioners, the medical history, and the findings made on examination. (T 19)

■ At the outset, the court notes that fibromyalgia is unique and because of the unavailability of objective clinical tests, it is difficult to determine the severity of the condition and its impact on one's ability to work. The Eleventh Circuit has observed:

'[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.' *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996). Thus, a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of

2. The ALJ observed that Dr. Ikeman's examination revealed slight reduction in range of motion of the thoracolumbar spine; normal straight leg raising, generally hypermobile joints, grip strength of forty-five pounds force bilaterally, full movement of all joints with no evidence of any peripheral joint synovitis, local tenderness over the transverse and spinous processes, and full neck motion with mild pain on extremes of motion. (T 18, 161–165)

3. Dr. Yonker further opined that plaintiff may occasionally crouch, but she must never climb, stoop, kneel, or crawl. He found that plaintiff's reaching, pushing/pulling, and see-

ing were affected by her impairments, and he noted certain environmental restrictions. (T 223–224)

4. In the RFC assessment by the state agency physician dated March 6, 2000, the physician stated that it appeared that plaintiff may have fibromyalgia, however her physical examination showed no significant severe objective findings. (T 215)

5. It should be noted that the RFC assessments by the state agency physicians, dated October 6, 1999, and March 6, 2000, were completed prior to Dr. Yonker's medical assessment dated August 29, 2000. (T. 176, 217, 224)

severity and the physician must interpret the data for the reader. *Stewart v. Apfel,* No. 99–6132, 2000 U.S.App. LEXIS 33214, at *8–9 (11th Cir. Dec. 20, 2000) (citation omitted).

Here, plaintiff's diagnosis of fibromyalgia is undisputed. The ALJ himself found it to be a severe impairment. (T 17, 20) Thus, by definition, plaintiff's fibromyalgia significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). However, because of the unavailability of objective clinical tests showing the severity of plaintiff's condition and the effect it has on her ability to work, here, it is difficult to determine whether good cause exists to reject Dr. Yonker's opinion. This is particularly true in light of the ALJ's failure to specify the reasons for rejecting Dr. Yonker's opinion.

Rheumatologists may be better qualified to determine the effects of fibromyalgia because not all doctors are trained to recognize this disorder. *See Stewart,* 2000 U.S.App. LEXIS 33214, at *8 (citation omitted); *see also Burroughs v. Massanari,* 156 F.Supp.2d 1350, 1367 (N.D.Ga. 2001) (acknowledging that a specialist in rheumatology is better qualified to diagnose fibromyalgia and determine its effects on an individual); 20 C.F.R. § 404.1527(d)(5) (stating that specialists' opinions on medical issues related to their area of specialty are generally given more weight). Further, the regulations provide:

> [g]enerally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). As such, Dr. Yonker's opinion is especially important, and the ALJ's explanation that Dr. Yonker's opinion "is not consistent with the evidence of record as a whole, including the doctor's own examination findings," (T 19) is too general to permit meaningful judicial review in this case. Upon consideration, the court finds the ALJ erred by failing to properly evaluate Dr. Yonker's opinion, and a remand is warranted. On remand, the ALJ is directed to reevaluate Dr. Yonker's opinion and identify specifically what evidence of record "as a whole" was inconsistent and which of Dr. Yonker's own examination findings were inconsistent with his opinion.

**B.** The Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments. 42 U.S.C. § 423(d)(2)(B); *Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir.1986). In *Bowen v. Heckler,* 748 F.2d 629 (11th Cir.1984), the court held that where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling. In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled. *Id.* at 635; *Walker v. Bowen,* 826 F.2d 996, 1001 (11th Cir.1987).

Plaintiff also argues that the ALJ did not consider the combined effect of all her impairments and subjective symptoms, including pain. In particular, she asserts that the ALJ ignored her irritable bowel syndrome and depression. Further, plaintiff argues that the ALJ failed to consider all her impairments in determining her RFC. (Dkt–19 at 16–17)

In this case, it is unclear whether the ALJ considered the combined effect of

plaintiff's impairments before determining her RFC. However, without reaching the merits of this claim and in light of plaintiff's case being remanded on the above ground, the ALJ is directed to address the potential problems related to this contention and to specifically indicate whether he considered all her impairments singularly and in combination. The ALJ is reminded of his duty to state specifically the weight accorded to each item of impairment evidence and the reasons as to why he accepted or rejected the evidence. *See Lucas v. Sullivan,* 918 F.2d 1567, 1574 (11th Cir. 1990); *Gibson,* 779 F.2d at 623.

C. As for plaintiff's contention that the ALJ failed to consider the corroborative written testimony from one of her caregivers (Dkt-19 at 18), the court concludes that the ALJ should not have ignored such evidence. (T 117–118) On remand, the ALJ shall specifically evaluate the testimony of Gregory Copeland. *See id.*

### CONCLUSION

While concluding that remand for further fact-finding is necessary due to errors of law committed at the administrative level, this court expresses no views as to what the outcome of the proceedings should be. At the reopened hearing, each party should have the opportunity to submit additional evidence.

Accordingly, and upon consideration, it is **ORDERED** that:

(1) the decision of the Commissioner denying benefits shall be reversed and this case remanded for further administrative proceedings consistent with the foregoing discussion; and

(2) the Clerk of Court enter final judgment pursuant to 42 U.S.C. § 405(g) and direct this case be closed as this is a "sentence four remand." *See Shalala v. Schaefer,* 509 U.S. 292, 302–03, 113 S.Ct. 2625, 125 L.Ed.2d

239 (1993); *Newsome v. Shalala,* 8 F.3d 775, 779–80 (11th Cir.1993).